UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GALBRAITH LABORATORIES, INC.                                                                PLAINTIFF

v.                                                                      CIVIL ACTION NO. 3:15-CV-00553-CRS

NANOCHEM SOLUTIONS INC., AND
FLEXIBLE SOLUTIONS INTERNATIONAL, INC.                               DEFENDANTS

Memorandum Opinion

I.  Introduction

Galbraith Laboratories, Inc. ("Galbraith") filed this lawsuit against Flexible Solutions International, Inc. ("Flexible Solutions") and Nanochem Solutions Inc. ("Nanochem"), (collectively, the "Defendants"). The Court previously granted the Defendants' partial motion to dismiss.

Galbraith now moves for leave to file an amended complaint and for reconsideration of the Court's prior ruling. The Court will grant leave to amend. The Court will revise its prior opinion and order as explained below.

II.  Factual allegations in the proposed amended complaint

In its previous memorandum opinion, the Court detailed the factual allegations Galbraith asserted in its original complaint. *See* Mem. Op. & Order 2 – 3 (Apr. 8, 2016), ECF No. 27. Galbraith repeats many of those allegations in its proposed amended complaint, and the Court does not need to detail them again. For purposes of this motion, the Court incorporates the facts from its previous opinion and assumes the following factual allegations as true:

In 1991, Dr. Alan Kinnersley, working as a scientist in Galbraith Laboratories, explored potential uses of polyaspartic acid for agricultural products. Kinnersley Decl. ¶ 2, ECF No. 17-1.

1

Donlar Corporation ("Donlar") became interested in Kinnersley's research on polyaspartic acid and sought to form a relationship, perhaps even a joint venture. *Id.* In a lab notebook entry dated April 24, 1992,[1] Kinnersley wrote that the stickiness of polyaspartic acid could be used in "other pesticides, such as insecticides & herbicides." *Id.* Ex. D, Page ID# 203.

In May 1992, Galbraith and Donlar, the Defendants' predecessor in interest, entered into a Joint Development Agreement ("JDA") in which they agreed to develop agricultural products containing polyaspartic acid. In June 1994, Galbraith and Donlar entered into the Technology Assignment Agreement ("TAA"), which superseded the JDA.

Under the TAA, Galbraith assigned to Donlar its rights in what became the 735 Patent. TAA 1, ECF No. 8-2. Galbraith also assigned to Donlar "inventions and discoveries, whether patentable or not, that (1) use or include [polyaspartic acid]; and (2) were conceived during the JDA by Galbraith or Donlar or both, as evidenced by written documents." *Id.*

Galbraith assigned to Donlar its rights in at least eleven other patents. Am. Compl. ¶ 32. U.S. Patent Nos. 5,635,447 (the "447 Patent");[2] 5,646,133 (the "133 Patent"); and 5,709,890 (the "890 Patent") all expired after the 735 Patent. Am. Compl. ¶ 32. Galbraith says that the 447 Patent did not expire until March 22, 2016. Pl.'s Mem. 2.

---

[1] Both Galbraith and the Defendants say that the date under Kinnersley's name on the lab notebook entry is April 25, 1992. Pl.'s Mem. Supp. Mot. Am. 4, ECF No. 31-1; Def.'s Resp. Opp. Mot. Am. 4, ECF No. 33; Pl.'s Reply Supp. Mot. Am. 3, ECF No. 37. In its reply, Galbraith also dates the notebook entry as "May 8, 1992," apparently confusing the date of the JDA with Kinnersley's note. *See* Pl.'s Reply 6. The date under Kinnersley's name on the lab notebook entry is "4.24.92," or April 24, 1992.

[2] Throughout its brief, Galbraith refers to U.S. Patent No. 5,635,447 as the "477 Patent." *See, e.g.*, Pl.'s Mem. 3. The Defendants also refer to the 447 Patent as the "477 Patent." *See, e.g.*, Def.'s Resp. 4. Galbraith's reply refers to the 447 Patent, as does the proposed amended complaint. *See, e.g.*, Pl.'s Reply 5 & Am. Compl. ¶ 32 – 34. The Court assumes that the term "477 Patent" is an error because the patent assignment agreement filed with the U.S. Patent Office refers to U.S. Patent No. 5,635,447, and no patent on that list ends with the numbers 477. Pat. Assignm't Sch. A.

The 447 Patent is entitled "Polyorganic acids and their analogies to enhance herbicide effectiveness." Pat. Assignm't Sch. A, ECF No. 31-7. Both the 133 Patent and the 890 Patent are entitled "Polyaspartic acid and its analogues in combination with insecticides." *Id.*

The TAA obligated Donlar to pay Galbraith royalties on the sale of Licensed Products. TAA 5. "Licensed Products" included any product covered by the 735 Patent, and "any product sold in the agricultural market for agricultural purposes that uses or includes" polyaspartic acid. *Id.*

The Court previously dismissed Galbraith's claims, with prejudice, to the extent that Galbraith's complaint sought post-expiration royalties on the 735 Patent, which has expired. Mem. Op. 7 – 8. The Court concluded that the TAA provides for the payment of royalties for the post-expiration use of the 735 Patent, which is unlawful per se. *See Kimble v. Marvel Entm't LLC*, 135 S.Ct. 2401 (2015); *see also*, *Brulotte v. Thys Co.*, 379 U.S. 29 (1964).

### III. Galbraith's motion to amend

Galbraith moves for leave to amend its complaint. Pl.'s Mot. Am. Compl., ECF No. 31. The Court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court may deny leave to amend when the amendment would be futile. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC v. Medical Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). To overcome a motion to dismiss, the complaint must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts a complaint's well-pleaded facts as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A. <u>Whether the proposed amended complaint alleges that Galbraith assigned the 447 and 133 Patents to Donlar</u>

The Defendants ask the Court to deny leave to amend on futility grounds. Def.'s Resp. First, they argue that the proposed amended complaint is futile because Galbraith has not alleged sufficient facts to demonstrate that Galbraith assigned the 447 and 133 Patents to Donlar. *Id.* at 4 – 5. The Defendants point to the TAA's assignment provision. Under the TAA's assignment provision, Galbraith assigned

> to Donlar all right, title and interest Galbraith may have in [what became the 735 Patent]… and *inventions and discoveries, whether patentable or not*, that (1) use or include [polyaspartic acid] … and (2) *were conceived during the JDA* by Galbraith or Donlar or both, as evidenced by written documents, and Donlar hereby accepts such assignment.

TAA 1 (emphasis added).

The Defendants argue that Galbraith did not assign the 447 and 133 Patents because a document attached to the proposed amended complaint shows that Kinnersley did not conceive of the ideas which led to those patents during the JDA, as the TAA's assignment provision requires. Def.'s Resp. 4 – 5. Dr. Kinnersley's lab notation is dated April 24, 1992, which was two weeks before Galbraith and Donlar formally entered into the JDA on May 8, 1992. In this note, Kinnersley wrote that polyaspartic acid's "sticky" quality may be useful in "other pesticides, such as insecticides & herbicides." Kinnersley Decl. Ex. D. Thus, the argument goes, Kinnersley conceived of the ideas which led to the 447 and 133 Patents before the JDA, not during the JDA, as the TAA's assignment provision requires.

The Court has a duty to construe the proposed amended complaint in the light most favorable to Galbraith. *American Postal Workers Union, Local 96 v. City of Memphis*, 361 F.3d 898, 904 (6th Cir. 2004). Accordingly, the Court declines the Defendants' invitation to narrowly construe the "inventions and discoveries … [that] were conceived during the JDA" language.

4

Galbraith argues that the amendment is not futile because it alleges that Kinnersley conceived of the inventions and discoveries that led to the 447 and 133 Patents[3] during the JDA. Pl.'s Mem. 4 – 5. Galbraith points to this language in the proposed amended complaint:

> A declaration of Dr. Alan Kinnersley, a former employee of Galbraith provides written documents, including an April 1992 entry from Kinnersley's lab notebook, establishing that the claimed inventions of at least the '447 and '133 Patents were conceived during the JDA and, thus, assigned in the TAA. The Dr. Kinnersley Declaration is attached as Exhibit 1 to Response to Defendants' Partial Motion to Dismiss (DN 17-1) and, pursuant to Federal Rule of Civil Procedure 10(c), is part of this Amended Complaint for all purposes.

Am. Compl. ¶ 32.

Kinnersley "conceived early on in the joint venture the idea for using polyaspartic acid as a carrier for pesticides and herbicides." Kinnersley Decl. ¶ 6. Kinnersley shared many ideas

---

[3] Galbraith's memorandum and its proposed amended complaint focused on the 447 and 133 Patents. *See, e.g.*, Pl.'s Mem. 4 (discussing the 447 and 133 Patents); *see also*, Am. Compl. ¶ 32 (abbreviating the 447 and 133 Patents but not the 890 Patent). The Defendants properly responded to Galbraith's arguments about the 447 and 133 Patents. In its reply, Galbraith argued that the Defendants' futility argument failed because the Defendants did not address the 890 Patent. Pl.'s Reply 2 (abbreviating the 890 Patent for the first time because it had not done so in the proposed amended complaint or its memorandum).

The Court rejects Galbraith's attempt to play "gotcha" in its reply. "The court of appeals has said that it is improper to raise an issue for the first time in a reply as it prevents the nonmoving party from having a fair opportunity to respond." *Koffarnus v. United States*, 2016 WL 3190281 *1, *3 (W.D. Ky. Jun. 7, 2016). Raising arguments for the first time in a reply invites the infamous sur-reply, which is "highly disfavored." *Aldrich v. The University of Phoenix, Inc.*, 2016 WL 427923 *1, *2 (W.D. Ky. Feb. 3, 2016). As the parties are well-aware, sur-replies lead to responses in opposition, which lead to replies in support of motions for leave to file sur-replies. *See, e.g.*, Pl.'s Reply, ECF No. 25. Ultimately, the briefing tennis match continues, with each side clamoring to have the last word. Accordingly, the Court did not consider the 890 Patent in determining whether the proposed amended complaint is futile.

Also for the first time in its reply, Galbraith asked the Court to take judicial notice that Donlar claimed to be the sole owner of the 447 and 133 Patents at the time the U.S. Patent and Trademark Office issued them. *See* Pl.'s Reply 4 n.3. Then, Galbraith asked the Court to take judicial notice that the 447, 133, and 890 Patents include 54 claims. *Id.* at 6 n.4. Placing requests for the Court to take judicial notice in two footnotes in a reply, to which the opposing party cannot respond without seeking leave of Court, is improper. The Court declines Galbraith's requests to take judicial notice at this time.

with Donlar "during the time of the joint venture." *Id.* ¶ 7. For purposes of this motion to amend, it is not unreasonable to infer that although Kinnersley dated the lab notation April 24, 1992, Donlar and Galbraith continued to develop his idea about using polyaspartic acid in herbicides and insecticides "early on in the joint venture," *id.* ¶ 6, and "during the time of the joint venture," *id.* ¶ 7, as alleged in the amended complaint by way of Kinnersley's declaration attached thereto.

These factual allegations are sufficient to allege that Kinnersley's inventions and discoveries in connection with the use of polyaspartic acid in pesticides and herbicides were conceived during the JDA and that these inventions and discoveries led to the 447 and 133 Patents. Accordingly, the proposed amended complaint alleges sufficient facts which, if proven, would lead to the conclusion that Galbraith assigned to Donlar its interest in the 447 and 133 Patents by virtue of the TAA.

    B.  <u>Whether the proposed amended complaint alleges that the royalties provision applies to later-issued patents</u>

The Defendants' second futility argument draws on the TAA's royalties provision. The Defendants argue that even if Galbraith assigned to Donlar the 447 and 133 Patents, the proposed amended complaint is futile because Galbraith has not alleged that the TAA's royalties provision encompassed later-issued patents like the 447 and 133 Patents. Def.'s Resp. 5 – 7. Under the TAA's royalties provision, Donlar would pay Galbraith

> a royalty on its sales of Licensed Products and Licensing Revenue … . 'Licensed Products' shall mean (1) any product covered by [the 735 Patent], and (2) any product sold in the agricultural market for agricultural purposes that uses or includes [polyaspartic acid].

TAA 5.

The Defendants argue that the absence of specific language indicating that Donlar and Galbraith intended the royalties provision to apply to patents issued after the 735 Patent means that the royalties provision does not apply to later-issued patents. Def.'s Resp. 8. They argue that the royalties provision only obligated Donlar to pay for the use of the 735 Patent and "non-patented products." *Id.*

Again, the Court must construe the proposed amended complaint in the light most favorable to Galbraith. *American Postal Workers Union*, 361 F.3d at 904. Accordingly, the Court declines the Defendants' invitation to narrowly construe the royalties provision as providing for the payment of royalties only for the use of the 735 Patent and non-patented products.

Here, the second half of the royalties provision obligated Donlar to pay royalties for sales of "any product sold in the agricultural market for agricultural purposes that uses or includes" polyaspartic acid. TAA 5. The royalties provision does not imply, as the Defendants suggest, that the royalties obligation only applied to sales of products using the 735 Patent and "non-patented products." Def.'s Resp. 8. It is alleged that because Galbraith and Donlar did not know which inventions and discoveries would lead to patent applications, Galbraith and Donlar agreed that Donlar would pay royalties on sales of "any product sold in the agricultural market" containing polyaspartic acid. Am. Compl. ¶ 21. It is further alleged that the parties chose the second half of the royalties provision as the "most convenient and efficient method of fixing the business value of the privileges granted to Donlar by the TAA." *Id.* ¶ 22.

These factual allegations are sufficient to suggest that the TAA obligated Donlar to pay royalties on sales of products using the 735 Patent and "any product sold in the agricultural market for agricultural purposes," containing polyaspartic acid. It is not unreasonable to infer

7

from these allegations that if Donlar sold a polyaspartic acid product, whether or not the product used the 447 and 133 Patents, the royalties provision would obligate Donlar to pay for that use.

Finding that the proposed amended complaint is not futile, the Court will grant Galbraith leave to amend its complaint.

IV. Galbraith's motion to reconsider

The Court previously construed the royalties provision as providing for the payment of royalties for the post-expiration use of the 735 Patent. *See* Mem. Op. & Order 5 – 7. In construing the royalties provision as providing for royalties for the post-expiration use of a patent, the Court previously granted the Defendants' partial motion to dismiss "to the extent that Galbraith's claims seek payment of royalties on an expired patent." *Id.* at 7 – 8. Galbraith asks the Court to reconsider this prior ruling.

The Court may reconsider a prior ruling when there is "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009).

Galbraith argues that the Court erred in construing its arguments as seeking payment of royalties on an expired patent. Pl.'s Mem. 14. Instead, the Court should have construed the TAA as assigning patents issued after the 735 Patent, and providing for royalties payments until the latest-running patent assigned in the TAA expired. *Id.*

Galbraith's arguments for reconsideration are well-taken, and the Court recognizes the need to correct a clear error or prevent manifest injustice. Upon further review, the Court emphasizes that the discussion of *Kimble* and *Brulotte* in the previous opinion is sound. *See* Mem. Op. 4. In particular, "the TAA has no provision differentiating the calculation of royalties

8

during the patent period and a calculation of royalties after the [735 Patent] expired." Mem. Op. 7. Likewise, "as in *Kimble*, the TAA has no expiration date for the payment of royalties." *Id.*

However, the Court recognizes its error in applying *Kimble* and *Brulotte* to the TAA's assignment and royalties provisions. Under *Kimble*, parties have "still more options" when a licensing agreement covers multiple patents. 135 S.Ct. at 2408. Additionally, "royalties may run until the latest-running patent covered in the parties agreement expires." *Id.*

Here, the TAA's assignment provision granted Donlar "all right, title and interest" in what became the 735 Patent, "*and* inventions and discoveries, whether patentable or not, that (1) use or include [polyaspartic acid]; and (2) were conceived during the JDA by Galbraith or Donlar or both, as evidence by written documents." TAA 1 (emphasis added). As discussed above, it is not unreasonable to construe the assignment provision as applying to "inventions and discoveries" including the later-issued 447 and 133 Patents. *See* discussion *supra* Part III(A).

The TAA's royalties provision obligated Donlar to pay royalties for sales of "any product" covered by the 735 Patent, "*and* any product sold in the agricultural market for agricultural purposes that uses or includes" polyaspartic acid. TAA 5 (emphasis added). As discussed above, it is not unreasonable to construe the royalties provision as obligating Donlar to pay royalties for using the later-issued 447 and 133 Patents. *See* discussion *supra* Part III(B).

Under *Kimble*, the TAA is a licensing agreement that covers multiple patents. 135 S.Ct. at 2408. Therefore, the royalties "may run until the latest-running patent covered" in the TAA expires. *See id.* At this juncture, Galbraith may assert claims to royalties until the latest-running patent assigned in the TAA expired.

The Court will grant Galbraith's motion for reconsideration.

V. <u>Conclusion</u>

The Court will grant Galbraith leave to file the amended complaint.

The Court will revise its previous memorandum opinion (DN 27) to reflect the following changes:

1. The Court will delete the following sentence: "For the reasons below, the Court will grant the Defendants' partial motion to dismiss." Mem. Op. 1. The Court will replace this sentence with: "For the reasons below, the Court will deny the Defendants' partial motion to dismiss."
2. The Court will delete the following sentence: "The Court concludes that the TAA provides royalties for the post-expiration use of Patent 735." Mem. Op. 7. The Court will replace this sentence with: "The Court concludes that the TAA provides for the payment of royalties until the latest-running patent assigned in the TAA expires. Galbraith may, at this juncture, pursue claims to royalties beyond the expiration of the 735 Patent."
3. The Court will delete the following sentence: "The Court will grant the Defendants' partial motion to dismiss to the extent that Galbraith's claim seek payment of royalties on an expired patent." Mem. Op. 7 – 8. The Court will replace this sentence with: "The Court will deny the Defendants' partial motion to dismiss."
4. The Court will delete the following sentence: "The Court will dismiss Count VI in full, as it seeks recovery for royalties on an expired patent." Mem. Op. 8. The Court will replace this sentence with: "The Court will deny the Defendants' motion to dismiss Count VI."
5. The Court will delete the following sentence: "The Court will dismiss Counts I-V to the extent that those claims relate to royalties accruing after expiration of the 735 Patent, with prejudice." Mem. Op. 8. The Court will replace this sentence with: "The Court will deny the Defendants' partial motion to dismiss as to Counts I-V."

6.  The Court will delete the following sentence: "The Court will dismiss Count VI, with prejudice." Mem. Op. 8.  The Court will replace this sentence with: "The Court will deny the Defendants' motion to dismiss Count VI."

The Court will revise its previous order (DN 28) to reflect the following changes:

1.  The Court will delete the following sentence: "For the reasons set forth in the Memorandum Opinion and the Court being otherwise sufficiently advised, the Court [grants] the Defendants' partial motion to dismiss in full (DN 15)." The Court will replace this sentence with: "For the reasons set forth in the Memorandum Opinion and the Court being otherwise sufficiently advised, the Court **DENIES** the Defendants' partial motion to dismiss in full (DN 15)."

2.  The Court will delete the following sentence: "The Court [dismisses with prejudice] Counts I through V to the extent that those claims relate to royalties accruing after expiration of the 735 Patent."

3.  The Court will delete the following sentence: "The Court [dismisses with prejudice] Count VI."

The Court will enter an order in accordance with this opinion.

June 28, 2016

**Charles R. Simpson III, Senior Judge
United States District Court**